Giles A. WANAMAKER, Appellant,

v.

COLUMBIAN ROPE COMPANY, George
R. Metcalf, Richard W. Cook, D. Barton
Chapman, Tristan E. Beplat, Robert W.
Seidler, Stephen G. Ludt, S. Warren
Metcalf, And Hancock & Eastabrook,
Appellees.

No. 159, Docket 95–9246.

United States Court of Appeals,
Second Circuit.

Argued Oct. 15, 1996.

Decided March 10, 1997.

See also 713 F.Supp. 533.

Giles A. Wanamaker, Skaneateles, NY, pro se.

David E. Peebles, Hancock & Eastabrook, Syracuse, NY, for Appellees.

Before: NEWMAN, Chief Judge, CARDAMONE, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Columbian Rope Company ("Columbian") hired Giles Wanamaker twenty-three years ago as in-house counsel. There was neither a formal employment contract, nor a definite term of employment, although there was a written agreement that, if a decision to terminate should be made, Columbian would

retain Wanamaker on the payroll for six months. Wanamaker claims, however, that he was given oral assurances when he started that he was hired for a "career position."

In the early 1980's, Columbian suffered a severe economic downturn. From 1980 to 1987 it decreased its workforce from 70 salaried and 250 hourly workers to 19 salaried and 80 hourly workers. In 1982, the Columbian Board of Directors initially decided to abolish Wanamaker's position, telling him that if he opened his own law office, Columbian would send him business. It quickly rescinded its termination decision when it realized that it would be cheaper to keep Wanamaker in-house.

In 1984, the Board again decided to abolish Wanamaker's position, and again revoked its decision when Columbian got embroiled in a large antitrust suit requiring Wanamaker's knowledge and expertise.

In 1986, Columbian's Board of Directors made its third, and final, decision to fire plaintiff, effective in June 1987. Wanamaker started looking for a new job.

In March 1987, Wanamaker advised the Chairman of the Columbian Board of Directors, Warren Metcalf, that he believed that the termination decision violated the age discrimination laws. Later, Wanamaker announced to the Board that if the decision to fire him was not rescinded he would sue. Columbian then placed Wanamaker on a leave of absence, paying him at full salary through June 1987 and at 70% salary for three months thereafter. After March, however, Columbian barred Wanamaker from using company facilities. Wanamaker was then 54 years old.

According to Wanamaker, during his last few months at Columbian, the company was grooming a 37 year-old attorney, Richard Cook, to replace him as General Counsel. Wanamaker also alleges that by the time he was fired, the company's economic downturn had reversed itself. He points to some statistics and other evidence to show that Columbian made it a practice to weed out older employees for younger ones. He also described instances when officers of Columbian made comments illustrating their desire to terminate the old and bring in "young blood."

Wanamaker filed a summons and complaint in the United States District Court for the Northern District of New York principally alleging: (1) age discrimination in willful and nonwillful violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law, N.Y. Executive Law § 290 et seq.; (2) retaliatory termination in violation of the ADEA and State Human Rights Law; and (3) breach of contract. The complaint was delivered to the district court clerk's office on October 28, 1988. The statute of limitations for nonwillful violations expired October 31. Wanamaker paid the filing fee on November 1, 1988.

In 1989, the district court granted all defendants' motions to dismiss the nonwillful claims as untimely. After discovery, all defendants moved for summary judgment; and Wanamaker cross-moved for reconsideration of the district court's earlier decision to dismiss his nonwillful ADEA claims. The district court denied Wanamaker's motion for reconsideration.

As to the defendants' motions for summary judgment, the court assumed that Wanamaker could establish a prima facie case of age discrimination but: (1) found that the defendants articulated a legitimate, non-discriminatory basis for firing Wanamaker; and (2) concluded that plaintiff presented no evidence that the articulated reason was pretextual or that age was the motivating factor in defendants' decision. With regard to the retaliation claim, the court concluded that plaintiff suffered no adverse employment action because of his threat to sue, and, thus, he could not establish a prima facie case of retaliation. Finally, the court granted defendants' motions as to the breach of contract claim because the so-called oral assurances of a "career position" were not part of an enforceable employment agreement.

Wanamaker appeals, arguing that: (1) the filing of the complaint, not payment of the filing fee, satisfied the statute of limitations as to his nonwillful claims; (2) there are fact issues for the jury regarding his ADEA and retaliation claims; (3) his termination was in

violation of an employment agreement; (4) even if the federal action were properly dismissed the district court should not have dismissed the pendent state law claims. We agree with the district court's disposition of all the claims made here, although we do not reach the question whether the statute of limitations on the nonwillful claims was tolled on October 28 (the date the action was filed) or November 1 (the date plaintiff paid the filing fee). The district court chose the latter, but because we agree that Wanamaker's claim for age discrimination could not survive a motion for summary judgment we express no opinion on the statute of limitations problem.

We write only to address Wanamaker's retaliation claim. *See Mesnick v. General Electric Co.,* 950 F.2d 816, 827 (1st Cir.1991) (retaliation claim not precluded by inability to establish violation of ADEA).

## DISCUSSION

A. *Wanamaker's Retaliation Claim under ADEA*

Wanamaker received notice in October 1986 that he was to be terminated in June 1987. In March 1987, he informed the Columbian Board that he felt compelled to sue for age discrimination. In response, the Board gave him his salary through June 1987, and 70% salary for an additional three months, but refused to let him use a company office, secretary or telephone to conduct a job hunt. Wanamaker claims that his complaints of age discrimination to Columbian officers were protected activity under the ADEA, and that Columbian's barring him from company facilities was adverse employment action in retaliation for this protected conduct. He also asserts that this retaliatory conduct harmed his reputation and hindered his ability to look for new employment.

■ We approach Wanamaker's age-based retaliatory discharge claim in the same way as retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, *see Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1154–55 (8th Cir.1989) (retaliation claims brought under ADEA treated similarly to those brought under Title VII). As in

Title VII cases, we tread the familiar path paved in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), to examine the allocation of burdens of proof and the merit of retaliation claims. *See Wentz,* 869 F.2d at 1154 (retaliation claim brought under ADEA follows same approach taken in retaliation claims under Title VII); *see also Cosgrove v. Sears. Roebuck & Co.,* 9 F.3d 1033, 1038–39 (2d Cir.1993) (describing burdens of proof in retaliations claim brought under Title VII).

■ The court's first step is to determine whether the plaintiff established a *prima facie* case of retaliation. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff's burden at this stage is slight— he may establish a *prima facie* case with *de minimis* evidence. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). A *prima facie* case of retaliation under the ADEA requires proof that: (1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *See Barber v. CSX Distrib. Svcs.,* 68 F.3d 694, 701 (3d Cir.1995) (retaliation claim under ADEA); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995) (retaliation claim under Title VII).

■ Even employees who have been notified that they will be terminated retain the protections of the ADEA. *See Connell v. Bank of Boston,* 924 F.2d 1169, 1179 (1st Cir.1991) (employee about to be terminated protected under ADEA); *see also Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 884–85 (7th Cir.1996) (former employee still protected under retaliation provision of ADEA). The ADEA shields employees from the "unlawful [conduct of] an employer [who] discriminate[s] against any of his employees ... because such individual ... has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). Accordingly, Wanamaker's opposing discriminatory treatment is protected activity under the ADEA. We are not persuaded, however, that Columbian's ac-

tions, taken in response to Wanamaker's threat, constituted adverse employment action.

We recognize that, as in retaliation cases brought under Title VII, the ADEA does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and that less flagrant reprisals by employers may indeed be adverse. *See Collins v. State of Illinois,* 830 F.2d 692, 703 (7th Cir.1987) (in Title VII case, employer can make job undesirable without affecting money or benefits). On the other hand, "not every unpleasant matter short of [discharge or demotion] creates a cause of action" for retaliatory discharge. *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir. 1994). Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of "adverse." *See id.*

At least one court has held that the denial of an office and telephone *contributed* to an atmosphere of adverse employment action. *See Collins,* 830 F.2d at 704. But the loss of these services, standing alone, has never been held adverse action. In *Collins* the employee's loss of a phone and office was accompanied by a loss of status, a clouding of job responsibilities, and a diminution in authority. *See id.*

Generally, the ADEA, like Title VII, protects individuals from actions injurious to *current* employment or the ability to *secure future* employment. *See Veprinsky,* 87 F.3d at 891 (Title VII); *see also* Patricia A. Moore, Note, *Parting is Such Sweet Sorrow: The Application of Title VII to Post–Employment Retaliation,* 62 Fordham L.Rev. 205, 217 (1993) (noting that ADEA is hybrid of FLSA and Title VII, with prohibitions similar to Title VII). An employee who has been terminated but who remains in company offices to facilitate a job hunt is not often in a position to suffer employment action so deleterious as to render his *current* employment situation bleaker than it already is, i.e, a job with no future. Wanamaker does not claim that he suffered any losses that would adversely affect his current employment situation.

The terminated employee, however, may have tangible *future* employment objectives, for which he must maintain a wholesome reputation. Thus, plaintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company "blacklists" the former employee, *see Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), wrongfully refuses to write a recommendation to prospective employers, *see Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1054–55 (2d Cir.1978), or sullies the plaintiff's reputation, *see id.* at 1054.

Even here Wanamaker's claim falters. We cannot say that, for someone in Wanamaker's position, the loss of a phone and office is sufficiently deleterious to constitute adverse employment action prohibited by the ADEA. Blacklisting and refusing to recommend an individual tend to besmirch his reputation. But barring a terminated employee from using an office and phone to conduct a job hunt presents only a minor, ministerial stumbling block toward securing future employment. We are not moved by Wanamaker's conclusory, unsupported claims that the loss of these services had an injurious effect on his reputation in the legal community.

The First Circuit has reached the same conclusion. In *Connell v. Bank of Boston,* 924 F.2d 1169, 1179–80 (1st Cir.1991), the plaintiff had been notified that he was to be terminated. Two weeks before his last day, he hired counsel to advance ADEA claims, and his employer evicted him from the company's office. The "only detriment to [the] plaintiff as a result of the . . . sudden eviction . . . was the loss of the use of his office . . . to contact prospective employers." *Id.* at 1179. The *Connell* court held that these circumstances did not constitute adverse employment action.

We hold that the loss of an office and phone by an employee who has already been informed of a termination decision, and is waiting out his numbered days on the payroll

searching for a new job, does not, in and of itself, amount to adverse employment action.

### 1. *The State Law Retaliation Claim*

Wanamaker argues that the district court should not have granted summary judgment dismissing his pendent state law claims, and suggests that he should be allowed to file a new action in state court under the New York State Human Rights Law.

Age discrimination claims brought under the New York State Human Rights Law, N.Y.Exec.Law §§ 290–301, are governed by the same standards as those brought under the ADEA. *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1158 (2d Cir.1993). Hence, a district court may dismiss claims brought under the New York State Human Rights Law, on the ground that the plaintiff failed to establish a claim under the ADEA. Whether the court should reach the pendent state claims lies within the sound discretion of the district court. *Morse v. University of Vermont*, 973 F.2d 122, 127 (2d Cir.1992).

We have already concluded that Wanamaker failed to state any claim for retaliation under the ADEA. We conclude that the district court did not abuse its discretion in dismissing the pendent state law claims as well.

We have considered the other claims raised by Wanamaker in the district court and substantially agree with that court's disposition of the merits thereof.

### CONCLUSION

Wanamaker failed to establish a claim under the ADEA for retaliation. We therefore affirm the district court's judgment.