Philjay ALSTON, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY, Defendant.

No. 96 Civ. 7150(RLC).

United States District Court, S.D. New York.

April 1, 1998.

Law Offices of Reginald A. Boddie (Reginald A. Boddie, Marcia Brathwaite, of counsel), New York City, for Plaintiff.

New York City Transit Authority General Counsel's Office (Martin B. Schnabel, Daniel Topper, Evelyn Jonas, of counsel), New York City, for Defendant.

## *OPINION*

ROBERT L. CARTER, District Judge.

Following a verdict in favor of plaintiff Philjay Alston ("Alston") on a federal claim, the defendant New York City Transit Authority ("NYCTA") moves for judgment as a matter of law or as against the weight of the evidence, pursuant to Rule 50, F.R.Civ.P.; or, in the alternative, defendant moves for a new trial or remittitur, pursuant to Rule 59, F.R.Civ.P.

### I. Background

Plaintiff, a black, female bus driver with the NYCTA, was involved in a bus on bus accident on October 21, 1994, with a white, male bus driver. Following investigation by a white, male dispatcher, plaintiff was sent for drug and alcohol testing while the other bus driver was not, even though plaintiff was later found to be without fault for the accident. (Tr. at 150). On November 14, 1994, plaintiff filed a complaint with defendant's internal Equal Employment Office ("EEO") charging that the NYCTA discriminated against her by treating her differently than the bus driver with whom she had collided in October.[1]

---

1. NYCTA's EEO office eventually found "no reasonable cause to believe that discrimination occurred." (Tr. at 206).

On December 12, 1994, plaintiff was involved in another bus accident, her fourth in 1994. After the December accident, plaintiff was sent to driver retraining class and then given unannounced "investigative check-rides" meaning that NYCTA representatives rode on her bus and evaluated her driving performance. Plaintiff failed her first two check-rides on May 17 and July 21, 1995, but passed her third check-ride on August 29, 1995. As a result of her successful third check-ride, any disciplinary penalties for failing the first two check-rides were waived and no further check-rides were scheduled for plaintiff.

In March, 1995, NYCTA formulated a list that included plaintiff's name among approximately 100 bus drivers with multiple accidents and poor operating records. After receipt of a Freedom of Information Act ("FDIA") request from a *New York Post* reporter, NYCTA released the list to the newspaper on or about May 3, 1995. The list was subsequently published under the title of the worst bus drivers in New York. (Pl.'s Mem. of Law in Opp. at 4).

As a result of these incidents, plaintiff filed a complaint against defendant for sex and race discrimination and retaliation with the federal Equal Employment Opportunity Commission ("EEOC") on June 16, 1997. On September 26, 1997, plaintiff also sued the NYCTA alleging race and sex discrimination in violation of both Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000(e) et. seq. ("Title VII") and New York Executive Law § 296 (the "Human Rights Law"). Plaintiff's complaint also charged defendant with the failure to grant her employment terms and conditions equal to other employees because of her race, in violation of 42 U.S.C. § 1981. Finally, plaintiff alleged that retaliatory actions were taken against her in violation of Title VII.

Specifically, Alston claimed that she was sent for retraining, placed on the 100 worst drivers list, given check-rides, and subjected to random drug tests[2] due to her complaints and litigation against NYCTA. (Pl. Trial Mem. of Law at 13). The stress from the original incident as well as from the retaliation, plaintiff claimed, caused her to suffer on-going mental and emotional distress, headaches, neck and shoulder problems, and anxiety, among other symptoms. (Pl.'s Mem. of Law at 5).

On January 20, 1998, the case went to trial before a jury. On January 23, 1998, after a 3-day jury trial and one day of deliberations, the jury returned a verdict. The jury found that defendant unlawfully retaliated against plaintiff for filing her EEO and EEOC complaints and awarded Alston $250,000 in compensatory damages.[3] The NYCTA was found not liable for discrimination against plaintiff on the basis of race or sex.

## II. Judgment as a Matter of Law

 The NYCTA moves for judgment as a matter of law, pursuant to Rule 50(b), F.R.Civ.P., with respect to Alston's retaliation claim. A motion for judgment as a matter of law may be granted when " '(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor

---

**2.** In addition to the tests conducted directly after her October, 1994 bus accident, plaintiff was subjected to alleged random drug and alcohol testing on December 2, 1996, and January 10, 1997. This testing was in addition to plaintiff's annual periodic tests which were already scheduled for January 23, 1997, based on her birthdate. (Tr. at 182–184). Plaintiff was subjected to another random drug and alcohol test in November, 1997.(Id.).

**3.** Plaintiff's brief incorrectly states that plaintiff "prevailed before the jury on her 42 U.S.C. § 1981 and New York State Human Rights Law

claims." (Pl.'s Mem. of Law of Opp. at 10). As the record indicates, she prevailed on her Title VII claim instead. Plaintiff's Pre–Trial Memorandum of Law states that the "jury should ... render plaintiff a finding of liability against the defendant under Title VII as the result of defendant's actions in retaliating for plaintiff's protected activities." (Pl.'s Trial Mem. of Law at 13). Plaintiff's Proposed Jury Instructions also indicate that plaintiff was retaliated against in violation of Title VII. (¶¶ 8–10). Finally, the jury instructions themselves included charges based upon the Title VII standard. (Tr. at 387–390). Therefore, the opinion will discuss plaintiff's Title VII retaliation claim.

of the movant that reasonable and fair minded men could not arrive at a verdict against him.'" *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir.1984) (quoting *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980)). In considering the Rule 50(b) motion, "[t]he district court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Maguire Co., Inc. v. Herbert Construction Co.*, 945 F.Supp. 72, 74 (S.D.N.Y.1996) (Carter, J.). In so doing, however, "'the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987) (quoting *Mattivi*, 618 F.2d at 167–68).

■ The NYCTA maintains that it is entitled to judgment as a matter of law because plaintiff did not establish a prima facie case of retaliation. In order to establish a prima facie case, plaintiff must show that: (1) she was engaged in statutorily protected activity; (2) her employer was aware of the protected activity; (3) she suffered adverse employment actions; and (4) a causal connection exists between the adverse employment actions and the protected activity. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir. 1997).

While not disputing that plaintiff's filing of the EEO and EEOC complaints was protected activity in accordance with the first prong of a prima facie case, the NYCTA argues that Alston failed to establish the remaining three prongs. Specifically, defendant avers that Alston did not show that the individuals who took the adverse action against her knew of her filed complaints, that Alston did not suffer any adverse employment action, and that she has not proven a causal connection between the adverse action and the filing of the complaint, thereby creating an insuffi-

cient evidentiary basis upon which the jury could have rendered its decision.

■ In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed EEO and EEOC complaints. The Second Circuit has established that corporate entities can be put on notice of certain acts without individuals within the corporation having been explicitly told of them. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir.1996) (holding that plaintiff's complaints to an officer of the company in conjunction with maintaining her complaint during subsequent internal investigation of the matter, in effect, communicated her concerns to the corporation as a whole). Accordingly, an individual NYCTA employee's ignorance of plaintiff's complaints cannot serve to obfuscate the NYCTA's general corporate knowledge of such actions.[4] Plaintiff's filing and maintenance of her internal EEO complaint certainly put the NYCTA on notice that she was engaged in statutorily protected activity.

■ Defendant's arguments that plaintiff failed to satisfy the third prong of a prima facie case—subjection to adverse employment actions—are also unpersuasive. Adverse employment actions are not defined "solely in terms of job termination or reduced wages and benefits, . . . less flagrant reprisals by employers may indeed be adverse." *Wanamaker*, 108 F.3d at 466. In fact, adverse employment actions are not defined at all, but are left to the court's discretion to make determinations on a case by case basis. *See id.* ("Because there are no bright-line rules, courts must pour over each case to determine whether the challenged employment action reaches the level of 'adverse.'"). In the instant case, defendant sent plaintiff for retraining and subjected her to several drug tests within a short time period. (Tr. at 150, 183–185). Defendant also placed plaintiff's name on a list of 100 drivers targeted as NYCTA's most accident prone and threatened her with disciplinary action after conducting check rides that

---

**4.** Case law cited by defendant to discount NYCTA's awareness of plaintiff's complaint, *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192 (11th Cir.1997), actually goes to the "causal link" prong of a prima facie retaliation claim and will be addressed later in this opinion.

found plaintiff's driving deficient. (Tr. at 162, 164). Thus, the court finds defendant's actions, when viewed in the aggregate, to be adverse.[5] *See Collins v. State of Illinois*, 830 F.2d 692, 703–704 (7th Cir.1987) (in Title VII case, holding that employer can make job undesirable without affecting money or benefits based on a combination of events such as loss of status, clouding of job responsibilities, and diminution of authority).

■ Defendant's arguments concerning plaintiff's satisfaction of the final component of a prima facie case—establishing a causal link between Alston's protected activity and the adverse employment actions—are more compelling. Although plaintiff testified that she was sent for retraining, placed on a published list of worst drivers, given check rides, and subjected to repeated random drug tests (Tr. at 153, 162, 164, 182–184), none of the NYCTA employees responsible for these employment decisions admitted knowledge of plaintiff's complaints at the time their decisions were made. Louis Iaconetti, general superintendent of plaintiff's bus depot responsible for implementing retraining policy, testified that the recommendation for plaintiff's retraining was made in December of 1994, but that he did not learn of plaintiff's EEO complaint until early 1995. (Tr. 84–85). Philip Travers, the superintendent in systems safety responsible for generating the list of 100 worst bus drivers, testified that he did not know about plaintiff's EEO complaint when he compiled the list. (Tr. 263). Termaine Garden, the deputy director for public affairs responsible for disseminating the 100 worst drivers list to the newspaper, testified that he did not know plaintiff and that he was unaware of any EEO complaint filed by her at the time the newspaper requested the list under the Freedom of Information Act. (Tr. at 283–284). Ronald Liburd, supervisor of the drug reporting program responsible for generating lists of drivers to be drug tested, testified that he did not know plaintiff. (Tr. at 322–

327). Plaintiff presented no conflicting evidence countering these disclosures.

Defendant cites *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192 (11th Cir.1997), to argue that the NYCTA's employees' stated unawareness of plaintiff's EEO and EEOC complaints precludes the establishment of a casual connection between plaintiff's actions and the NYCTA's response. In *Raney*, a discharged employee sued her former employer, alleging, *inter alia*, claims for gender discrimination and retaliation under Title VII. The circuit court affirmed the district court's grant of summary judgment in favor of the employer because of the employee's inability to establish the requisite causal link between protected expression and adverse action when she failed to show that the relevant corporate agents knew of her protected expression. *Id.* at 1197–1198. The circuit court stated that their "cases have required plaintiffs to show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." *Id.*

In the instant case, defendant's awareness of plaintiff's suit has already been established. While the individual NYCTA employee's statements are relevant to the ultimate determination of causality, it is the jury's duty to evaluate these statements for their credibility and veracity. A jury is entitled to disregard such testimony if it feels that testimony is unreliable. Therefore, the denials of individual awareness highlighted by defendant, in and of themselves, do not preclude a jury finding against the defendant. In any event, the holding in *Raney* has not been incorporated into Second Circuit precedent and is more instructive than obligatory in nature.

■ Furthermore, irrespective of the NYCTA employees' dearth of knowledge concerning plaintiff's activities, proof of a causal connection can be shown merely by the proximity in time between the protected

---

5. The random drug tests were not included specifically in the jury charge in regards to retaliation. However, Alston gave testimony about the random drug tests and the defendant called a witness to establish the tests' neutrality. (Tr. at 183–185, 230–231, 321–342). Furthermore, these tests, in conjunction with other employment actions, are relevant to a jury's determination of retaliation. Therefore, whatever weight the jury may have given these tests in their decision regarding plaintiff's retaliation claim will not be discounted.

activity and the adverse employment action. *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). In this case, after plaintiff filed her EEO complaint in November of 1994, she subsequently was directed to attend retraining in December, her name was placed on the 100 worst drivers list in March, 1995, and she experienced her first check ride on May 17, 1997. It is true that plaintiff's position is weakened by the fact that she was not directed to attend retraining or placed on the 100 worst drivers list until after she was involved in her fourth bus accident of 1994 in mid-December. (Tr. 199). Nevertheless, while an intervening event such as plaintiff's fourth accident may serve to break the causal chain, such a rift is a factual determination generally left to the jury for evaluation. Thus, despite the weak evidentiary basis for establishing a causal link between plaintiff's protected activity and the adverse employment actions, the court finds that a jury could have evaluated the credibility of the witnesses and the proximity of the adverse employment actions to find such a link. Accordingly, the court finds that plaintiff did establish a prima facie case of retaliation.

■ Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate legitimate, non-discriminatory reasons for its actions. *Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir.1988). Defendant argued that its actions were motivated by legitimate safety concerns. Specifically, defendant argued that retraining was required of drivers experiencing multiple accidents in order to identify and correct any problems and to improve public safety. (Tr. at 81, 105). It is uncontroverted that plaintiff had four accidents in 1994.[6] Under the plaintiff's bus depot's policy, drivers who had three or four accidents were routinely sent for retraining, regardless of who was at fault. (Tr. at 80, 98–99). Plaintiff was one

of 800 drivers retrained in 1995. (Tr. at 318).

Defendant further stated that establishing the list of 100 worst bus drivers contributed towards the development of a plan to monitor such drivers for purposes of preventing further accidents. (Def.'s Mem. of Law at 6). Travers testified that plaintiff's name was placed on the list because she had more than three accidents in 1994. (Tr. 262). Once the *New York Post* requested the list, Garden testified, the NYCTA's legal department found that the FOIA obligated its delivery. (Tr. at 281–282) All bus drivers placed on the list were targeted for and given check rides. (Tr. 313). Once plaintiff passed her third check ride, these rides ceased. (Tr. 220).

Finally, defendant articulated its reason for subjecting plaintiff to random drug tests in close succession, namely, to comply with federal regulations that require fifty percent of all "safety-sensitive employees" be randomly drug tested on an annual basis.[7] (Tr. at 299). In addition, NYCTA is required by state law to give biennial drug tests to every bus driver on their birthday. (Tr. at 299). Stephen Vidal, NYCTA's Chief Officer for training and operations performance, stated that individuals can be randomly tested more than once in a five week period, and that 153 other bus drivers besides plaintiff were tested randomly twice or more between December 1, 1996 and January 31, 1997. (Tr. 304).

Thus, defendant proffered non-discriminatory reasons for sending plaintiff to retraining, for placing plaintiff's name on the list of 100 worst bus drivers, for subjecting plaintiff to check-rides, and for administering multiple drug tests to plaintiff within a small time period.

■ Once a defendant articulates legitimate, non-discriminatory reasons for his actions, the burden shifts to plaintiff to demonstrate that the articulated reasons were pretexts for retaliation. *See Taitt*, 849 F.2d

---

6. Contrary to plaintiff's wish to distinguish between accident and incident, Iaconetti testified that even when bus drivers are not considered at fault, a collision with another vehicle is considered an accident. (Tr. at 80). According to that definition, plaintiff acknowledged four accidents in 1994. (Tr. at 199).

7. "Safety-sensitive employees" means any employee, including bus drivers, who is directly responsible for the transportation of the public. (Tr. at 299, 302).

at 777. "[T]o determine whether [a defendant's] putative purpose is a pretext, a factfinder need not, and indeed should not evaluate whether a defendant's stated purpose is unwise or unreasonable." *DeMarco v. Holy Cross High School,* 4 F.3d 166, 170–71 (2d Cir.1993). Rather, the decision should be based on whether the proffered reason is the actual reason for the challenged action. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988).

In her Memorandum of Law in Opposition, plaintiff does not present arguments that defendant's reasons for its actions are pretextual. Instead, she argues that defendant "failed to sufficiently rebut plaintiff's prima facie case." (Pl's Mem. of Law in Opp. at 21). Consequently, plaintiff offered no evidence to establish that defendant's proffered reasons for directing her to retraining, for placing her name on the worst bus drivers list, and for subjecting her to check rides and random drug tests were pretextual. Furthermore, plaintiff presented no evidence that similarly situated people were treated differently or that her experiences were out of the ordinary under the circumstances. She did not lose her job or any benefits; she did not suffer any unfavorable mark upon her record; and the check-rides ceased as soon as she passed her third one.

Finally, plaintiff introduced no evidence to disprove the NYCTA's reasoning for establishing the 100 worst bus drivers list, for including her name on it, or for divulging the list to the newspaper pursuant to the FOIA.[8] In particular, she offers no evidence of bus drivers with records similar to hers that were left off the list. Instead, plaintiff cursorily hints that two drivers who had allegedly killed people with their busses were not included on the 100 worst drivers list. (Tr. at 270–273). However, the nature of these drivers' alleged accidents were never introduced into evidence and testimony of their actions arose solely from plaintiff's lawyer and the reading of a newspaper headline by Travers. (Tr. at 268–273).

Due to the total lack of rebuttal on the part of the plaintiff to overcome defendant's proffered non-discriminatory reasons for its conduct, the court finds that "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Haskell,* 743 F.2d at 120. In reaching this decision, the court is not improperly assessing "the weight of conflicting evidence" because no conflicting evidence in the form of rebuttal was presented. *Mattivi,* 618 F.2d at 167. Accordingly, the court issues judgment for the defendant notwithstanding the jury's verdict, pursuant to Rule 50, F.R.Civ.P.

---

8. Plaintiff's only mention of pretext in her Memo of Law in Opposition is an assertion that plaintiff's name was included on the 100 worst drivers list as pretext for giving her check-rides. (Pl.'s Mem. of Law in Opp. at 22). However, she offers no evidence supporting this proposition. Instead, she argues that defendant's claim that the check-rides were a safety-precaution was contrary to evidence that plaintiff had already completed a retraining class. (Id.). In essence, plaintiff is arguing that the check-rides themselves were also pretexts, presumably for retaliation, based on the fact that plaintiff underwent retraining five months before the first check-ride occurred. (Id.). This confused logic does not serve to rebut defendant's proffered non-discriminatory reason for placing Alston on the 100 worst bus drivers list or for giving her check-rides.