Jenilu ZBORAY, Plaintiff,

v.

**WAL–MART STORES EAST, L.P., Defendant.**

No. 3:08CV00239 (DJS).

United States District Court, D. Connecticut.

Sept. 3, 2009.

Frank P. Cannatelli, Cannatelli Law Office, Hamden, CT, for Plaintiff.

Pamela J. Moore, Robert J. Gallo, II, McCarter & English, Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Jenilu Zboray ("the Plaintiff"), brings this action against the defendant, Wal–Mart Stores East, L.P. ("the Defendant"), alleging that the Defendant retaliated against her in violation of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60(a)(4)

("CFEPA").[1] Now pending before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that hereafter follow, the Defendant's motion for summary judgment (**dkt. # 46**) is **GRANTED.**

## I. FACTS

In December 1993, the Defendant hired the Plaintiff as a cashier at its store located in North Windham, Connecticut. In March 2000, the Plaintiff began working in the Defendant's Vision Center as an optician's apprentice. The Plaintiff performed various tasks in the Vision Center, including selling eye glasses, filling prescriptions, ringing up customers, and scheduling eye exams.

The Plaintiff was evaluated yearly based on her performance of these job functions. The following scale applied to the evaluations: "below expectations"; "meeting expectations"; and "exceeding expectations." In her Local Rule 56(a)(2) Statement, the Plaintiff asserts that "[t]he person [sic] who wrote the performance [sic] reviews were not optical shop supervisors. These included Marvin Key, Phyllis Parmenter, Dave Peterson. So, Plaintiff was not disciplined by people qualified to discipline her, from the optical shop supervisors." (Pl.'s Statement of Undisputed Facts ¶ 3.) In her January 2001 evaluation, the Plaintiff received twenty-one "below expectation" ratings, eight "meets expectations" ratings, and one "exceeds expectations" rating, with an overall rating of "meets expectations." (Def.'s Ex. 3.) In her December 2002 evaluation, the Plaintiff received fourteen "below expectations" ratings, fifteen "meets expectations" ratings, and one "exceeds expectations" rating, with an overall rating of "meets expectations." (Def.'s Ex. 4.)

The Plaintiff contends that following these two evaluations, the Defendant retaliated against her based on her involvement in a case filed in this District titled *Key v. Wal–Mart, Inc.,* 3:03cv00144(RNC).[2] In *Key,* a co-worker of the Plaintiff named Marvin Key ("Mr. Key") filed suit against the Defendant for allegedly discriminatory comments made by one of the Defendant's optometrists. The Plaintiff allegedly witnessed these comments, and between June and August 2003, met with the Defendant's counsel, Gregory Reilly ("Attorney Reilly"), to discuss and review her knowledge of the case. On September 29, 2003 Attorney Reilly and Mr. Key's counsel deposed the Plaintiff about her knowledge of the allegedly discriminatory remarks made to Mr. Key.

Following the deposition, the Plaintiff was contacted by a lawyer for the Defendant, Mitchell Fishberg ("Attorney Fishberg"), who notified her that the *Key* case was moving to trial. Following this conversation, Attorney Fishberg and another lawyer for the Defendant, Kristine Mackin, had a face-to-face meeting with Plaintiff at the Vision Center in "Exam Room 2." During this meeting, the attorneys told the Plaintiff that they thought the case was going to go to trial and that she might be a witness. The Plaintiff also contends that

1. In the complaint, the Plaintiff also brought CFEPA sex and age discrimination claims. In her opposition memorandum, however, the Plaintiff conceded that she was unable to make a prima facie case for these claims. Therefore, the Court grants summary judgment absent objection on Count One (sex and age discrimination) of the complaint.

2. This case was assigned to the Honorable Robert N. Chatigny, who granted in part and denied in part the defendant's motion for summary judgment. *See Key v. Wal–Mart, Inc.,* No. 3:03CV144 (RNC), 2004 WL 2377141 (D.Conn. Sept. 29, 2004).

the Defendant's attorneys coached her, telling her "if [you don't] remember, to say [you don't] remember" and that, "[you] should back Wal–Mart because [you] work for Wal–Mart." (Pl.'s Dep. at 247:16–24.)

The Plaintiff never testified at trial because the *Key* case was settled out of court in December 2005. The Plaintiff became aware of the settlement during a discussion she had with a supervisor, Mona Searles ("Searles"). In her deposition, the Plaintiff described the discussion, stating, "Mona [Searles] came from the back, returned to the Vision Center and said Roger [Noll] just chewed her ass out—excuse me—Roger just chewed her ass out and said that we're going to be in debt for the next ten years because Wal–Mart—because Marvin just sued the company for $89,000 and he's got a couple more lawsuits to go." (Pl.'s Dep. at 250:8–14.) During this conversation, there was no discussion of the Plaintiff's involvement in the *Key* case. (Pl.'s Dep. at 254.)

The Plaintiff asserts that following her deposition and her meetings with the Defendant's attorneys, she experienced "increased hostility form Wal–Mart staff, including [her] supervisors." (Pl.'s Compl., p. 7 ¶ 16.) Specifically, the Plaintiff states that following her final meetings with the Defendant's attorneys, she saw changes in the demeanor of her managers, Roger Noll ("Noll") and Searles. With regard to Noll, the Plaintiff testified that she "went from being one of the favorites to all of a sudden get her out of the store." (Pl.'s Dep. at 265:20–21.) With regard to Searles, the Plaintiff testified that "[w]hen [she] was the top seller for the week, [Searles] would never praise me for anything, but yet if the guys did something, [Searles] complimented them. . . . When orders would come in she would say-she would want other people to check the box instead of

me, when I was doing it for years." (Pl.'s Dep. at 267:1–8.)

The Defendant's disciplinary policy sets out a four-level progressive disciplinary procedure (called "coaching") for employees who commit infractions. (Def.'s Ex. 8.) Employees who commit an initial infraction receive verbal coaching. For a second infraction, employees are given written coaching. For a third infraction, employees get an additional written coaching known as a "Decision Day," a day off with pay during which employees are to determine whether they are going to make the necessary improvements to retain their employment. Following a Decision Day, employees who commit an additional infraction may be terminated.

In March 2005, the Plaintiff received a verbal coaching from her supervisor, Susan Kennedy ("Kennedy"). The Defendant asserts that Kennedy disciplined the Plaintiff because she: "(1) sold a patient the wrong kind of lenses; (2) allowed another patient to pick up lenses even though he still owed money on the lenses which was against Wal–Mart's policy; and (3) entered incorrect specification heights on a patient's glasses that "could have severely injured that patient's eyes." (Def.'s Statement of Facts ¶ 10.) The Plaintiff admits that the verbal coaching took place, but denies that Kennedy was the appropriate person to discipline her, or that the behavior that caused the disciplinary action ever occurred.

In April 2005, the Plaintiff received a written coaching from Kennedy. In the written coaching, Kennedy stated that the Plaintiff: "(1) continued to make unnecessary mistakes[ ] on patients orders; (2) allowed another customer to pick up glasses with a balance still due; (3) sold another patient the wrong kind of lens; and (4) incorrectly measured the specification heights from several pairs of glasses re-

sulting in a loss to the store." (Def.'s Statement of Facts ¶ 10.) In Kennedy's formal write up of the written coaching, the Plaintiff stated, "I do not agree with everything on this coaching, will check into this matter." (Def.'s Ex. 10.)

In October 2005, Kennedy conducted Decision Day coaching with the Plaintiff because, according to the Defendant, "she was observed working well over her scheduled work hours for numerous weeks" without her supervisor's permission. (Def.'s Ex. 11.) Although given a Decision Day coaching, the Plaintiff was not given a paid day off for contemplation in accordance with the Defendant's disciplinary policy. In her Decision Day coaching document, the Plaintiff vehemently denies she was working over scheduled hours, asserting that Kennedy had given her authority to work 40 hours, and that she was just following her manager's instructions. The Plaintiff also states that some of the hours that attributed to her exceeding her scheduled hours can be attributed to her "coming in early to discuss the Marvin Key case with the Wal–Mart attorneys." (Pl.'s Reply to Def.'s Statement of Facts ¶ 12.) The Plaintiff contends that, although someone from personnel named "Anita" had given her authorization to come in early and speak with the Defendant's attorneys, she was still written up by Kennedy for doing so.

Sometime in October 2005, Searles became the Plaintiff's new supervisor. (Def.'s Statement of Facts ¶ 13). In November 2005, the Plaintiff was given her annual review, which cited thirteen job competencies for which the Plaintiff needed to improve. The Plaintiff's was given an overall rating of "below expectations." (Def.'s Ex. 12.) The Plaintiff did not dispute any part of the review, and in the "Associate Comments" portion of the review stated, "I will improve all areas of my performance. It's worth it, I love my job." (*Id.*) The Plaintiff currently denies the validity of the criticisms found in the review and again asserts that the performance review should have been conducted by the optical shop supervisor, not her direct supervisor.

In January 2006, the Defendant, though Searles, terminated the Plaintiff's employment. The Plaintiff's exit interview states that she was terminated because she "caused a refund of $107," "caused of a remake of $319," and incorrectly told a patient that the "doctor did not take Medicaid insurance." (Def.'s Ex. 13.) The Plaintiff denies each of these allegations and denies any poor work performance. In her complaint, she alleges that the refund in question was actually given by her supervisor, Searles. (Pl.'s Compl., p. 2 ¶ 9.) In addition, the Plaintiff asserts that she did not cause the remake of $319, and that the order was approved by the Licensed Optician on staff (Pl.'s Compl., p. 2 ¶ 10.) Finally the Plaintiff contends that it was the doctor, not the Plaintiff, who told the patient that the doctor did not accept Medicaid insurance for a patient. (Pl.'s Compl., p. 3 ¶ 11.)

## II. DISCUSSION

The Plaintiff alleges that the Defendant's termination of her employment was done in retaliation her involvement in the *Key* case. The Plaintiff asserts that this allegedly retaliatory termination is in direct violation of the CFEPA. The Defendant has moved for summary judgment on the Plaintiff's retaliation claim. The Court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. CFEPA RETALIATION

█ The CFEPA prohibits "any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding un-

der section 46a–82, 46a–83 or 46a–84[.]" Conn. Gen.Stat. § 46a–60(a)(4). When considering retaliation claims, "[t]he Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA." *Williams v. Quebecor World Infiniti Graphics*, 456 F.Supp.2d 372, 383 (D.Conn.2006) (citing *Levy v. Comm'n of Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996) ("Although this case is based solely on Connecticut Law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes")). Retaliation claims brought pursuant to federal statute are reviewed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir.2003) ("The *McDonnell Douglas* burden shifting analysis used in claims of discrimination in violation of Title VII also applies to retaliation claims brought pursuant to Title VII.").

"The court's first step is to determine whether the plaintiff established a *prima facie* case of retaliation." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997). "In order to establish a prima facie case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir.2006). "The plaintiff's burden at this stage is slight-[s]he may establish a *prima facie* case with *de minimis* evidence." *Wanamaker*, 108 F.3d at 465.

If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the

defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant is able to provide such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reason were not true reasons, but served as a pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817.

### 1. Prima Facie Case

There is no dispute that the Plaintiff has satisfied the first and third elements of her prima facie case. Her deposition testimony for the *Key* case and her discussions with the Defendant's attorneys for that case are protected activities. In addition, the termination of the Plaintiff's employment is undoubtedly an adverse employment action. The Defendant argues, however, that the Plaintiff has failed to satisfy the second element (awareness of the protected activities) and the fourth element (causal connection between the adverse action and the protected activities).

### a. Awareness of the Protected Activities

 The Defendant asserts that the Plaintiff "cannot establish the second prong of her prima facie case with regard to the deposition testimony because her supervisors were unaware that she had even given a deposition or otherwise been involved in the *Key* Case." (Def.'s Summ. J. Mem., p. 20.) The Plaintiff responds that "people working at Wal–Mart had to know [about her involvement in the *Key* case], based upon her information and be-

lief, of her involvement." (Pl.'s Opp'n Mem., pp. 1–2). The Plaintiff contends that the Defendant's knowledge of her protected activity can be proven by the fact that she had to apply with the Defendant for time off to testify at the deposition. The Plaintiff also states that she notified "Anita from personnel that she would need the day off, and was given the day off with pay." (Pl.'s Aff. ¶ 11).[3] Additionally, the Plaintiff contends that during the last six months of her employment, Anita from the personnel department gave her permission to come in at 9:00 a.m. to be interviewed by the Defendant's attorneys. The Plaintiff further claims that Mr. Key's attorneys called her while she was at work, and that store personnel knew about her involvement in the *Key* case because the Defendant's attorneys would leave messages with the Plaintiff's co-workers. According to the Plaintiff, post-it notes and messages relating to the *Key* case were left for her on the counter at the Vision Center where they were visible for all Vision Center employees to see.

The Defendant's argument here is that because the Plaintiff cannot provide any direct evidence that any of her supervisors (Noll, Kennedy, or Searles) knew of her involvement in the *Key* case, the knowledge requirement of her prima facie case cannot be satisfied. The Second Circuit, however, has stated that "[n]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general cor-

**3.** The Defendant contends that the Plaintiff's assertion in her affidavit that she asked "Anita from personnel" for time off contradicts the Plaintiff's deposition testimony, and, as a result, the entire affidavit should be ignored. There is no testimony in the Plaintiff's deposition, however, that contradicts the assertion in her affidavit that she was given permission for the day off in question. During her deposition, the Plaintiff did not testify that she did

not get permission from HR; instead, she testified that she could not remember whether she had gotten permission. Because these specific assertions in the affidavit are not contradicted by the deposition testimony, but rather "address[ ] an issue that was not, or was not thoroughly or clearly, explored in the deposition," it is permissible for the Court to consider them. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir.2000).

porate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. New York City Bd. Of Educ.,* 232 F.3d 111, 116 (2d Cir.2000); *see Reed v. A.W. Lawrence & Co. Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996) (finding the knowledge requirement "easily proved" because an officer of the corporate entity was aware of the plaintiff's protected activity); *Alston v. New York City Transit Auth.,* 14 F.Supp.2d 308, 311 (S.D.N.Y.1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision makers within the NYCTA knew that she had filed EEO and EEOC complaints.... [C]orporate entities can be put on notice of certain acts without individuals within the corporation having been explicitly told of them.").

The Court believes that the Plaintiff has satisfied this element of her prima facie case. At a minimum, there is a genuine issue of material fact as to whether the Defendant had corporate knowledge of the Plaintiff's involvement in the *Key* case. The Plaintiff was deposed by counsel for the Defendant, and had meetings with its attorneys on two separate occasions. These attorneys were acting on behalf of the Defendant, which was defending itself in an employment discrimination lawsuit. It is possible that the attorneys discussed the litigation with certain corporate officers of the Defendant.

In addition, when the Plaintiff met with the Defendant's attorneys, she states that she notified "Anita from personnel" that she would need the day off for the deposition. According to the Plaintiff, Anita stated, "Any time you got court, Jenilu, you always get paid for it." (Pl.'s Affid. ¶ 11). Moreover, following the deposition, the Plaintiff claims that she had to get permission from Anita in personnel to come in early to meet with the Defendant's attorneys. In light of the above, it can be

reasonably inferred that the Defendant, as a corporate entity, was aware of the Plaintiff's protected activities. Therefore, for the purposes of summary judgment, the Court finds that the Plaintiff is able to satisfy the second element of her prima facie case.

#### b. Causal Connection

■ The Court also believes that the Plaintiff has satisfied the causation element of her prima facie case. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon,* 232 F.3d at 117.

■ At the outset, the Court notes that the Plaintiff has not presented evidence of direct causation. In addition, with regard to her deposition testimony for the *Key* case, the Plaintiff is unable to establish indirect causality through temporal proximity because the deposition and the adverse employment action were not sufficiently proximate. To establish causation by temporal proximity, "the temporal proximity must be very close...." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotation marks omitted). The Plaintiff's deposition took place September 29, 2003, and her termination occurred on January 2006. A two-and-a-half year time span is too great a time span to establish causation. *See Douglas v. City of Waterbury,* 494 F.Supp.2d 112, 125 (D.Conn.2007) ("In the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish [a] temporal relationship.").

█ Although the temporal proximity between the deposition and the termination cannot establish causation, there may have been sufficient temporal proximity between the Plaintiff's meetings with the Defendant's attorneys (between September and December 2005) and her termination (January 2006). *See id.* ("Within the time period of one year, there is no firm rule. In some cases, time periods ranging from twelve days to eight months have been found to show the necessary temporal proximity.... In other cases, time periods ranging from two-and-a-half months to eight months have been deemed insufficient to show the necessary temporal proximity.") (internal citation omitted). This temporal proximity, however, does not establish indirect causation here because the adverse actions taken against the Plaintiff began well before her meetings with the Defendant's attorneys. The first step of the progressive discipline taken against the Plaintiff occurred in March 2005, and the second occurred in April 2005. Her meetings with the Defendant's attorneys occurred between September and December 2005. While "[i]t is ... true that temporal proximity can demonstrate a causal nexus[,] ... [w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001). Therefore, although there was temporal proximity between her meetings with the Defendant's attorneys and her termination, this proximity does not give rise to an inference of retaliation because the termination was a product of "an extensive period of progressive discipline" that lasted almost ten months. *See id.*[4]

Nonetheless, the Second Circuit "has consistently held that proof of causation can be shown ... indirectly, by showing that the protected activity was followed closely by discriminatory treatment, *or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct* ...." *Gordon*, 232 F.3d at 117 (emphasis added). In her complaint, the Plaintiff alleges that fellow employees were treated differently even though they engaged in behavior similar to hers. (*See* Pl.'s Compl., p. 2–4 ¶ 9–18.) The Plaintiff specifically asserts that: (1) a co-worker named Austin Bud Weissmann was not disciplined for processing errors; (2) a co-worker named Jim Valinksy was not disciplined for processing errors, billings errors, or losing glasses; and (3) a co-worker named Lawrence Eaddy was disciplined for prescription errors and processing errors, but was not terminated. Although the Plaintiff's submissions with regard to these individuals are minimal, the Plaintiff's burden in establishing her prima facie case is also minimal. Consequently, the Court shall give the Plaintiff the benefit of the doubt and conclude that she has satisfied her minimal burden in establishing a prima facie case of retaliation.

### 2. Legitimate, Non-discriminatory Reason

█ The burden now shifts to the Defendant to articulate a "legitimate, non-discriminatory reason" for the adverse actions taken against the Defendant. The Defendant has done so here. According to the Defendant, the Plaintiff was terminated at the culmination of a progressive disciplinary process, which documented her performance problems. The Defendant

---

4. The Court also points out that there is no temporal proximity between the Plaintiff's deposition on September 29, 2003 and the first step in the progressive discipline taken against her in March 2005. *See Douglas*, 494 F.Supp.2d at 125

maintains that, despite being given chances to improve her work performance, the Plaintiff continued making errors, and was terminated. Therefore, the Defendant has met its burden.

### 3. Pretext

Once a defendant articulates a legitimate, non-discriminatory reason for an adverse employment action, "the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext...." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir.2004) (internal quotation marks omitted). Here, the Court concludes that the Plaintiff has not met her burden. In the Court's view, there is insufficient evidence demonstrating that the Defendant's reasons for the Plaintiff's termination were a pretext for retaliation.

The Plaintiff argues that it can be proven that the reasons for termination provided by the Defendant were a pretext because "1. Plaintiff was not disciplined by people who are suppose [sic] to be supervising Plaintiff. 2. Defendant jumped the gun by terminating Plaintiff in violation of their [sic] own progressive discipline measures. 3. Plaintiff gives clear evidence she is disciplined for protected activity, speaking with Wal–Mart attorney and given prior approval. 4. Once given prior approval she is written up." (Pl.'s Opp'n Mem., p. 6). None of these points, however, establishes that the Defendant's stated reasons for the Plaintiff's termination were pretextual.

The Plaintiff first argues that the fact that she was disciplined by Kennedy and Searles is evidence of pretext because neither were qualified to be her supervisor. This assertion is contradictory to the evidence and law before the Court, and is without merit. The Plaintiff cites to Conn. Gen.Stat. §§ 20–150 and 20–151 to demonstrate that Searles and Kennedy were unqualified to be her supervisor. The relevant portion of Conn. Gen.Stat. § 20–150 reads as follows:

No optical glasses or kindred products or other instruments to aid vision that are produced or reproduced to personalized given formulas, or plano cosmetic contact lenses shall be sold at retail except under the supervision of a licensed optician and in a registered optical establishment, office or store. An optical establishment, office or store is defined as meaning one the owner of which has had issued to him an optical license selling permit.

In addition, the relevant portion of Conn. Gen.Stat. § 20–151 reads as follows:

Any licensed optician and any optical department in any establishment, office or store may apply to said department for a registration certificate to sell at retail optical glasses and instruments from given formulas and to make and dispense reproductions of the same, in a shop, store, optical establishment or office owned and managed by a licensed optician as defined in section 20–145 or where the optical department thereof is under the supervision of such a licensed optician, and said registration shall be designated as an optical selling permit.

In general, these statutes state that places selling optical equipment or products must have a licensed optician on staff overseeing the department. The Plaintiff herself has stated, however, that the Vision Center had a licensed optician on staff. (*See* Pl.'s Dispute Issue of Material Facts ¶ 6.) More important, though, is the fact that nowhere in these statutes does it say that only a licensed optician can mete out discipline in an optical department such as the Vision Center. Neither statute would prevent either Kennedy or

Searles from being the Plaintiff's direct supervisor.

In addition, throughout her employment with the Defendant, the Plaintiff signed several documents that listed Searles and Kennedy as her supervisors. For example, on the Plaintiff's evaluations and disciplinary documents, both Searles and Kennedy were listed as the plaintiff's "Manager/Supervisor" (Def.'s Exs. 9, 10, 11, 12, & 13.) Therefore, the Court rejects the Plaintiff's argument that she has demonstrated pretext because she was not disciplined by people who were proper supervisors.

The Plaintiff's argument that the "Defendant jumped the gun by terminating plaintiff in violation of their own progressive discipline measures" is also insufficient to demonstrate pretext. Prior to terminating the plaintiff, the Defendant followed its disciplinary procedure by giving the Plaintiff verbal coaching, written coaching, and a Decision Day. (Def.'s Ex. 10.) The Plaintiff asserts that because the Decision Day was not accompanied by the a day off from work, the Defendant violated its procedures, which in turn serves as evidence of pretext. The Court disagrees with this conclusion. Although it appears that the Plaintiff was not given a day off for her Decision Day, this is not sufficient to demonstrate pretext. Other than the day off, all the elements of the progressive disciplinary policy were strictly adhered to. The omission of a day off in no way demonstrates any evidence of pretext as no disciplinary levels were skipped prior to termination. Indeed, the Plaintiff was given a Decision Day; the Defendant simply did not send her home to determine whether she was going to make "the necessary improvements" to retain her employment. The Defendant's failure to give the Plaintiff a day off did not make the Plaintiff's termination more imminent.[5]

The Plaintiff next asserts that Kennedy disciplined her for meeting with the Defendant's attorneys even though she had prior permission to do so, and this in turn demonstrates pretext. The Plaintiff's assertion, however, contradicts her own deposition testimony. During her deposition, the Plaintiff testified as follows:

Q. Did you believe that this [disciplinary] coaching was in any way discriminatory?

A. Yes.

Q. And why was it discriminatory?

A. There was no need for this because [Kennedy] had authorized me.

Q. What was she singling you out for?

A. She authorized me to work 40 hours, no more, and I listened to her. I did what she said.

Q. Was it because of your sex?

A. No.

Q. Was it because of your age?

A. No.

Q: Was it because of the Marvin Key case?

A: No.

(Pl.'s Dep. at 195:11–12)

Thus, contrary to her summary judgment arguments, the Plaintiff has not provided "clear evidence" that she was disciplined for speaking with the Defendant's attorneys, and her simply saying that she has does not make it so. The Plaintiff

5. In fact, it appears that although the Defendant did give the Plaintiff a Decision Day, it softened the discipline a little by not sending the Plaintiff home. As the Court understands the Decision Day procedure, the day off is intended to be a punishment, not a reward. Thus, the Plaintiff is basically complaining that the Defendant, in implementing her Decision Day, was too kind in its discipline. This is not sufficient to demonstrate pretext.

herself has testified that the discipline she received was not because of her participation in the *Key* case.

Finally, the Court points out that the Plaintiff has not demonstrated that the Defendant's reasons for disciplining her, and ultimately terminating her employment, were untrue. The Defendant has presented evidence of a number of work-related incidents caused by the Plaintiff (e.g., making unnecessary mistakes on patients' orders), and the Plaintiff has not presented the Court with any admissible evidence that these incidents did not occur. Moreover, the Plaintiff's listing of co-workers who were not disciplined for work-related mistakes, although possibly sufficient to get her past the prima facie stage of her claim, is, without more, insufficient to demonstrate pretext. The Plaintiff made the allegations about these individuals in the complaint only. She has given no evidence about these co-workers; there is no deposition testimony from any of them, and there is no documentary evidence regarding their work performance. Thus, there is no way to tell whether the circumstances of the Plaintiff's job performance are in any way similar to the circumstances surrounding the job performances of those co-workers. Without any such evidence, the Plaintiff fails to present reliable comparators whom the finder of fact could consider in reaching a decision. Therefore, the Court finds that the Plaintiff has failed to demonstrate that the Defendant's proffered reasons for disciplining and terminating the Plaintiff were pretextual. Consequently, the Defendant's motion for summary judgment is granted.

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (dkt.# 46) is **GRANTED. Judgment in** favor of the defendant, Wal–Mart Stores East, L.P., shall enter on all counts of the complaint. The clerk shall close this file.