Edward G. DUNPHY, Plaintiff,

v.

DELTA AIRLINES, INC., Defendant.

No. 01–CV–6679 (JG).

United States District Court,
E.D. New York.

Sept. 19, 2003.

Wayne J. Schaefer, Certilman Balin Adler & Hyman, LLP, East Meadow, NY, for Plaintiff.

Ira G. Rosenstein, Andrew Fisher, Orrick, Herrington & Sutcliffe LLP, New York City, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, District Judge.

Plaintiff Edward Dunphy brings this action alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.;* New York Executive Law § 290 *et seq.;* and New York City Administrative Code § 8–107. The defendant has moved for summary judgment. For the following reasons, the defendant's motion is granted.

## BACKGROUND

### A. *Facts* [1]

Dunphy was born on May 3, 1946. He was first hired by Delta in June of 1968 as a Customer Service Agent at Newark International Airport in New Jersey. Dunphy received various promotions at Delta over the years, rising to the position of Marketing Manager in 1988, Cargo Sales Representative in 1993, and Regional Manager of Cargo Sales in 1996. In July of 1999, Delta eliminated Dunphy's position as Regional Manager Sales and Service, Northeast Region.[2] Because Delta did not have a position available for him in the Northeast, Dunphy consented to a transfer to a temporary position as System Leader—Priority Mail Service in Orlando, Florida. The transfer did not alter Dunphy's salary or grade level within the company.

While Dunphy's work in Florida was reviewed on a daily basis by Delta employees in Priority Mail Service in Orlando, he reported to Valerie Foulke Tiller, the Regional Director–Northeast, who was based in New York. Dunphy and Tiller had worked together for nearly 20 years but had never before had a reporting relationship.

Sometime in January 2000, Dunphy applied for the position of Outside Passenger Sales Representative, a position he had

---

1. The following undisputed facts are derived from Defendant's Rule 56.1 Statement, Plaintiff's Rule 56.1 Counter–Statement, and the exhibits to both these submissions.

2. Dunphy does not allege that the elimination of this position was motivated by age discrimination.

held several years earlier. The position involved no supervisory responsibilities, had the same pay grade Dunphy currently enjoyed, and would not have resulted in a salary increase for him. Dunphy's application was received late and he was not considered for or offered the position. The job went to Justine Rogers, for whom the position was a promotion.

Later in January 2000, Dunphy applied for the position of Regional Sales Manager, Northeast, which apparently would have been a promotion for him.[3] Delta supervisor Tom Oesterle and Jim Lokesak interviewed candidates from within the company, including Dunphy, Pat McGowan (born May 20, 1947), and Edward G. Kenny (born July 11, 1956). The job was initially offered to McGowan, who turned it down. Following McGowan's rejection of the offer, Oesterle requested that Delta's employment department solicit applications from outside the company. After a round of interviewing external candidates, Delta hired Rick Babcock.

Dunphy's temporary position in Florida was extended several times. In February of 2000, Tiller informed Dunphy's supervisor in Orlando, Lou Guimond, that she believed that, assuming that Dunphy had no other permanent position at the end of his temporary assignment in Florida, he should assume the role of Team Leader in the Air Logistics Department at John F. Kennedy Airport. Dunphy assumed the role of Team Leader at JFK in February of 2000. Upon his return to New York, Dunphy expressed his unhappiness with having to commute from his home in New Jersey to JFK, which is located in Queens, New York. Many of the tasks Dunphy performed in this new position were identical to those he had performed as Regional

Sales Manager before that position had been eliminated in July of 1999. From March through August 2000, Tiller sought approval from her supervisor to reinstate the Regional Sales Manager position and offer it to Dunphy. However, the requested approval was never granted.

In March 2000, Dunphy applied for one of two Account Manager positions that were open. Dunphy had previously held the title of Account Manager, and holding it again would not have resulted in an increase in grade level, supervisory responsibilities, compensation or benefits. Dunphy was considered for the position, but it was ultimately filled by two other candidates, who were Delta employees, for whom the position constituted a promotion.

In July 2000, Dunphy contacted the Equal Employment Opportunity Commission ("EEOC") and spoke to Enoch Nixon, an EEOC investigator. Dunphy complained to Nixon that Delta was discriminating against him because of his age. According to Dunphy's declaration, Nixon instructed him to submit a written document setting forth his claim, which Dunphy did, by letter dated July 24, 2000. After consulting an attorney, Dunphy filed a sworn EEOC charge on January 9, 2001.

Dunphy alleges that early in February 2001, after he filed the EEOC charge, Tiller's attitude towards him changed—that she became nasty, hostile, and overly critical. Specifically, Dunphy alleges that Tiller (1) accused Dunphy of having an excessive cell phone bill; (2) criticized the manner in which he had arranged a conference call; (3) questioned Dunphy's decision not to have a manager from each city in the system at their respective facilities at 4:00 A.M.; (4) accused Dunphy of not hav-

---

**3.** The Rule 56.1 Statement and its Counter-Statement do not state that this position would have been a promotion for Dunphy. However, defendant concedes this in its Memorandum in Support of Summary Judgment at page 15.

ing a plan in place concerning ULD container compliance; (5) immediately responded by email to Dunphy's submission via email of his weekly report, commenting, "You read my mind, I was waiting for your report;" (Dunphy Dep. at 117); (6) criticized Dunphy for failing to obtain a favorable mail rate from the United States Post Office for a city in his territory; and (7) told Dunphy that if he could not do his job, she would find someone who could (Dunphy Decl. at 6). Dunphy does not contend that he was formally disciplined following his filing of the EEOC charge in January of 2001.

In October 2001, Dunphy accepted a voluntary separation package offered by Delta to its employees. As a result, Dunphy received an enhanced severance package and, in return, executed a general release waiving his right to assert various claims against Delta.

### B. *Procedural History*

On August 17, 2001, the EEOC determined that Dunphy established a prima facie case of employment discrimination under the ADEA. Based on Delta's failure to respond to the charge, it further found that Delta engaged in employment discrimination and retaliated against Dunphy in violation of the ADEA. The complaint in this case was filed on October 10, 2001.

### DISCUSSION

### A. *The Standard for Summary Judgment*

Summary judgment must be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining wheth-

er material facts are in dispute, all ambiguities must be resolved and all reasonable inferences drawn in favor of the non-moving party. *Castle Rock Entm't, Inc. v. Carol Publ'g Group,* 150 F.3d 132, 137 (2d Cir.1998).

The initial burden is upon the moving party to demonstrate the absence of any genuine issues of material fact. *Adams v. Department of Juvenile Justice,* 143 F.3d 61, 65 (2d Cir.1998). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations and internal quotation marks omitted). The non-moving party cannot survive a properly supported motion for summary judgment by resting on the pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### B. *The ADEA*

To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under "circumstances giving rise to an inference of discrimination." *Roge v. NYP Holdings,* 257 F.3d 164, 168 (2d Cir.2001) (citations omitted). Once a plaintiff has established a prima facie case, the burden

shifts to the defendant, who is required to offer a legitimate, non-discriminatory rationale for its actions. *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000). "[O]nce the defendant has made a showing of a neutral reason for the complained of action, to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (internal quotation marks and citations omitted).

### 1. The Failure to Make Dunphy a Passenger Sales Representative or an Account Manager [4]

■ Dunphy fails to establish a prima facie case of discrimination with respect to Delta's decision not to offer him the Passenger Sales Representative or Account Manager positions because he suffered no adverse employment action.

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 138 (internal quotation marks and citations omitted). An adverse employment action works a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997). "Ex-

amples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Terry,* 336 F.3d at 138 (internal quotation marks and citations omitted).

Dunphy argues that the terms and conditions of his employment would have been materially altered by these transfers because they would have enabled him to work out of his home and thus avoid a long commute. While "the difference in location is certainly of tantamount importance to Plaintiff, it does not raise the denial of Plaintiff's transfer request to the level of an adverse employment action." *Duncan v. Shalala,* No. 97 Civ. 3607, 2000 WL 1772655, at *4 (E.D.N.Y. Nov. 29, 2000) (holding that denial of a lateral transfer which would have allowed plaintiff to be near his wife was not an adverse employment action); *Nonnenmann v. City of New York,* 174 F.Supp.2d 121, 132 (S.D.N.Y.2001) (holding that a denial of transfer was not an adverse employment action where the plaintiff asserted only that the transfer would allow him to work closer to home).

There are some circumstances under which a transfer or a failure to transfer may constitute an adverse employment action. In *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Serv.,* 82 F.3d 16, 22 (2d Cir.1996), the Second Circuit stated that plaintiff's contention that defendants moved him from an

---

4. Delta argues that Dunphy may not seek relief based on the January 2000 events (i.e., his unsuccessful effort to obtain the Outside Passenger Sales Representative and Regional Sales Manager positions) because he is time-barred. Those actions occurred prior to 300 days before the EEOC complaint was filed in

January 2001. Dunphy contends that the January 2001 complaint relates back to his July 24, 2000 letter to Nixon at the EEOC, and thus his claims based on the January 2000 events were timely. Because I find Dunphy's claims deficient on the merits, I need not resolve this issue.

"'elite' division of DSS, which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth" was sufficient—though the Court noted that plaintiff's case was "in this respect quite thin"—to show that he had suffered an adverse employment action. In this case, Dunphy argues that the denial of his application for a transfer into the sales operation was an adverse employment action because that operation was the "most time-tested route for advancement." (Dunphy Decl. at 2.) However, there is simply no evidence to support that assertion. Dunphy presents no evidence, for example, that the upper ranks at Delta include a disproportionate number of employees who came up through the sales operation. He relies solely on his conclusory (and inadmissible) assertion that the position he was denied offered him opportunity for advancement. Even in the context of examining his prima facie case, and recognizing that the showing required of him is de minimis, *Abdu–Brisson v. Delta Air Lines*, 239 F.3d 456, 466–67 (2d Cir. 2001), I find this insufficient, and conclude that no rational finder of fact would find that he had suffered an adverse employment action.

■ In any event, even assuming that Dunphy has stated a prima facie case of discrimination based on the denial of these transfers, Delta has put forth a legitimate, non-discriminatory reason for its decisions. Specifically, it has shown that it sought to promote individuals to open positions, rather than transfer them laterally. (Oesterle Decl. at 2–4.) Although Dunphy would have maintained his pay grade had he received the transfers, the positions themselves were compensated at much lower levels than Dunphy was being paid. In effect, Delta asserts, that would make the transfers demotions for Dunphy.

Placing him in those positions could "cause friction and poor morale among candidates" at Delta (like those who eventually filled the positions) who sought promotions within the company. (*Id.* at 4.) Dunphy has not rebutted Delta's legitimate, non-discriminatory justification for its decisions not to transfer him. He has offered no evidence that suggests that Delta's asserted reasons were pretextual or that another reason may have motivated its decisions. Therefore, Dunphy's claims based on these transfers must fail.

2. *The Failure to Promote Dunphy to Regional Manager*

■ Dunphy fails to establish a prima facie case of age discrimination based on Delta's decision not to promote him to Regional Manager because there is no evidence from which a rational finder of fact could draw an inference of discrimination. Indeed, the position was initially offered to another Delta employee (McGowan) who was 52 years old—only two years younger than Dunphy. Even assuming that Dunphy has established a prima facie case, he has failed to provide any evidence that Delta's legitimate, non-discriminatory reasons for its action—including Dunphy's lack of professionalism during his interview, evidenced in part by his failure to appear in business attire (Oesterle Decl. at 1–2)—are pretextual. Indeed, Dunphy admits he was dressed casually, but claims that his post-interview work plans required him to do so. I assume that to be true, and further assume that it may even have been unfair to hold his casual dress against him. But the ADEA proscribes age discrimination, not general unfairness in personnel decisions, and there is no evidence from which a rational jury could find age discrimination in this case.

3. *The Retaliation Claim*

■ Claims of retaliation under the ADEA are actionable only if (1) the plain-

tiff was engaged in an activity protected by the ADEA; (2) the employer was aware of the plaintiff's participation in that activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action. *Terry*, 336 F.3d at 141. Dunphy's retaliation claim fails because he was not subjected to an adverse employment action.

 Retaliatory harassment may constitute actionable adverse employment action but only where it results in a material adverse change in the terms and conditions of employment. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir.1999). The harassment about which Dunphy complains can be accurately characterized as the mere annoyances caused by one's supervisor ensuring that one's job is being well done.[5] While it seems unnecessary for Tiller to have been rude or nasty when monitoring Dunphy's performance, her behavior towards him is insufficient to support a jury finding of a materially adverse change in the conditions of his employment. *See Wanamaker*, 108 F.3d at 466. Therefore, Dunphy's claim of retaliation must be dismissed.

C. *State and City Discrimination Claims*

Delta argues, and Dunphy does not dispute, that the general release that he signed on October 26, 2001, waiving the right to assert claims against Delta covers state and city antidiscrimination statutes. Based on the language of the release, I agree.

## CONCLUSION

Based on the foregoing, Delta's motion for summary judgment is hereby granted

and Dunphy's case is dismissed in its entirety.

So Ordered.

---

**5.** Accordingly, no rational finder of fact could conclude that Dunphy's "working conditions [were] so intolerable that [he was] forced into an involuntary resignation," *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987), and had thus been constructively discharged, as Dunphy claims for the first time in his opposition brief (Opp'n Br. at 27).