**Leslie Moore MIRA, Plaintiff,**

v.

**John KINGSTON, et al., Defendants.**

**No. 15 Civ. 09989 (CM)**

United States District Court,
S.D. New York.

Signed 11/03/2016

Leslie Moore Mira, New York, NY, pro se.

Danielle Justine Moss, Jacquelyn Rose Weisman, Gregory I. Rasin, Proskauer Rose LLP, New York, NY, Michelle A. Annese, Proskauer Rose LLP, Newark, NJ, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMahon, District Judge.:

Plaintiff Leslie Moore Mira ("Plaintiff"), proceeding pro se, is in this Court because she has asserted a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against corporate Defendant Platts/McGraw Hill Financial, Inc., a division of S & P Global, Inc. ("Platts"), and individual Defendants John Kingston; Beth Harder ("Evans"), Kevin Saville, and Richard Rubin. Plaintiff's not entirely clear pro se complaint appears to allege that Defendants retaliated against her for speaking out against sexual harassment in the workplace by creating a racially hostile work environment (race being Mexican, which the court construes as national-origin discrimination), which led to

her constructive discharge, in violation of Title VII, New York State Human Rights Laws, and New York City Human Rights Laws. Plaintiff further alleges that Defendants' conduct has persisted since her departure from her employment. Together, these events have adversely affected her life.

Defendants have filed a motion to dismiss all claims as time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Beth Evans moves, pursuant to Rule 4(m), to dismiss because she has not properly been served.

Because Plaintiff's federal claims are time-barred and because Plaintiff cannot plausibly assert that the period for filing her administrative charge against Defendant Platts her former employer, was equitably tolled, her federal claims (which lie only against her employer, not against the individual defendants) must be dismissed. The Court will not consider her claims under state and local law, which are before it only by virtue of supplemental jurisdiction. Accordingly, they are dismissed without prejudice.

## BACKGROUND

### Plaintiff's Complaint

For purposes of this motion to dismiss, all the allegations made in the complaint are accepted as true. Unless otherwise noted, they are drawn directly from the complaint. *See* Compl., ECF No. 2. ("Compl.").

Plaintiff, whom I assume to be a female of Mexican origin, was a reputable employee of Platts prior to 2010 when the events that give rise to her complaint allegedly began. Plaintiff was employed by Defendant as a Senior Writer.

In late December 2009/early 2010, Human Resources ("HR") interviewed Plaintiff about a sexual harassment complaint that had been filed by a female coworker against non-party Bob DiNardo. Although Plaintiff did not say anything negative about DiNardo during that interview, Defendant Kingston, Plaintiff's supervisor, later said something about the fact that Plaintiff had participated in this interview, and did so in a negative manner.

Around the same time, Plaintiff observed an unnamed non-party, whom Plaintiff refers to as "Party X," who repeatedly made sexually inappropriate remarks and sexually objectified women in the office. Plaintiff never filed a sexual harassment complaint against Party X; instead she asked a co-worker to report Party X's behavior in her upcoming exit interview. Another (third) coworker overheard that discussion. Thereafter, although Plaintiff does not allege that the third coworker reported the overheard discussion to anyone at Platts management, Plaintiff alleges that Defendants created a hostile work environment and "retaliated" against her by, among other things, ostracizing her, building an anger management case against her, and discrediting her amongst her peers. Defendants' hostile actions allegedly included speculation (primarily by Defendant Kingston) that Plaintiff had connections with Mexican drug dealers (predicated solely on her Mexican heritage and previous residency in Mexico). Plaintiff felt particularly threatened by this false perception that she was associated with Mexican drug lords on the day that Defendant Rubin brought a knife to work and showed it to colleagues, saying that he would use it if someone "messe[d] with him." ¶ 15, 7.

Because Plaintiff believed her negative treatment at work was premised on her conversations about sexual harassment in the workplace, she emailed her superiors, directly referencing her sexual harassment concerns, and saying that "the matter was closed," in an attempt to quell her supervisors' concerns about her. ¶ 7, 6. This email led to a meeting with Plaintiff's supervi-

sors, Defendant Kingston and one Mr. Zipf, during which Kingston allegedly told plaintiff that, "We wouldn't want to go to HR with any complaints." ¶ 8, 6. Plaintiff gives no date for this meeting.

Starting in 2011, Defendants allegedly stepped up their harassment campaign against her. Plaintiff believes that Defendants began using their industry contacts to plant negative stories about Plaintiff in unspecified organs of the press, contested her naturalized United States citizenship in some unspecified venue and way, and "investigated" her. The only cognizable connection made in the complaint is that, as mentioned above, one supervisor in particular (Kingston) tended to make remarks about Plaintiff's alleged connection to the illegal drug trade in Mexico.

In 2012, Platts began to surveil Plaintiff, both in and outside the office. Plaintiff states that her personal home phone calls and email communications were intercepted, and that her home was broken into on various occasions. These surveillance allegations are based on Defendants and co-workers having repeatedly "referred to plaintiff's personal, out-of-office conversations and activities," to which they were not otherwise privy, and objects in her home having been moved or taken. ¶ 13, 7. Plaintiff bought a home surveillance camera, and informed the police that she believed her home was being entered without her permission. The police took no action. Plaintiff also alleges that she was followed and filmed on a summer 2012 vacation, and that she was photographed having intimate relations in her home. Plaintiff alleges that these images have been distributed on the internet, although Plaintiff concedes that she has never seen the images. Pl.'s Mem. in Opp'n to Mot. to Dismiss, 2, ECF No. 18 ("Pl.'s Opp'n").

In the spring of 2012, Plaintiff took a three-week sick leave due to emotional and physical exhaustion that resulted from her being followed. When she returned, Defendant Kingston wanted to contest Plaintiff's medical leave claim, but was prevented from doing so by HR manager, Chan, who stated that contesting the claim would be difficult because Plaintiff "*was* being followed." ¶ 20, 8 (emphasis in original).

On or about January 3, 2013, Plaintiff resigned from her position at Platts. Def's Mem. Mot. to Dismiss, 6, ECF No. 10 ("Def.'s Mot. to Dismiss"). Plaintiff alleges that her resignation was "in fact one of constructive discharge due to a workplace permeated with discriminatory action, ridicule, and insult sufficiently severe to have become abusive." Pl.'s Opp'n, 2.

**Post–Employment Allegations of Harassment**

Since her departure from Platts in January 2013, Defendants have allegedly continued to access her personal emails and other communications, to plant negative news stories about her, and to "sabotage her successive worklife." Compl., 8.

In her complaint, Plaintiff alleges four specific incidents of post-harassment that she attributes to Platts and its employees: (1) in the spring of 2014, an unknown man harassed Plaintiff on the subway with a Coca–Cola can by shaking it in her face and miming the act of pouring the soda onto her—an event she interpreted to be a reference to the Anita Hill documentary that she had just seen,[1] Pl.'s Opp'n, 4–5;

---

1.  Plaintiff cites a Wikipedia entry to provide context for this allegation. The Court notes that Plaintiff refers to the October 11, 1991 testimony of Anita Hill during the Senate Judiciary Committee's Supreme Court Nomination Hearings for the now Justice Clarence

Thomas. In her testimony Hill alleged she was sexual harassed by Justice Thomas when Hill worked for him at the EEOC. Her testimony included the following quote:

> One of the oddest episodes I remember was an occasion in which Thomas was drinking

(2) on January 13, 2015, Defendant Kingston wrote a "widely released email" that read, "Made so many friends, had dozens and dozens of great colleagues, had few co-workers who were, ahem 'interesting' and still provide both alumni and newcomers with hilarious stories that never get old," *id.* at 6; (3) in March of 2015, an unknown man who was selling candy on the subway made comments "of particular meaning to her," followed her off the train, and indicated that he was compensated (by parties unknown) for making the comments to her, before scratching her and grabbing her camera, *id.* at 4; and (4) sometime during the first quarter of 2016, Plaintiff had a physical altercation with an unknown person outside the Platts office building, where she had gone together with the person who intended to serve a summons and complaint on Defendant Rubin. *Id.* at 4. The altercation occurred when Plaintiff, believing the stranger to be eavesdropping on her conversation, pulled out her cell phone and took an unsolicited photo of the stranger, who responded by pushing and scratching Plaintiff. *Id.* Plaintiff does not allege that the individual who accosted her was Defendant Rubin, or any other defendant—or for that matter anyone associated with Platts.

There is no allegation in the prolix pleading before this Court that anyone associated with Platts took any action *vis-a-vis* Plaintiff with respect to her obtaining her next, or any subsequent, job. Indeed, admissions made in papers filed with in this action and in another action pending in this court reveal that Plaintiff started a new job the same month that she left her job at Platts, and that she held the job

with her new employer, Argus Media, for well over a year. *See* Pl.'s Opp'n, 6, and ECF No. 2 (Complaint) in *Mira v. Argus Media*, No. 15–CY–9990. Plaintiff has filed a suit similar to this one against Argus Media, alleging that Argus "discriminated against her throughout her employment," and "subjected her to a hostile work environment and surveillance in her personal, non-work life" as well.[2] *Id.* In her papers in opposition to the instant motion, Plaintiff alleges that there was a meeting among top officers of Platts and Argus in May 2013—four months after she left her employ at Platts and was hired by Argus—after which her Argus co-workers "became remote or distant" from her. Pl.'s Opp'n, 5.

### Plaintiff's Administrative Complaint

On February 3, 2015—761 days after she left her employment at Platts and 612 days after the alleged meeting of May 2013 (provided the meeting occurred on May 31, 2013, a date that reflects the most favorable construction of Plaintiff's undated allegation)—Plaintiff filed an administrative complaint with the New York State Division of Human Rights ("NYSDHR") Office of Sexual Harassment Issues, against Platts, John Kingston, Beth Evans, Kevin Saville, and Richard Rubin, alleging violations of New York State Human Rights Law, Article 15. Rasin Decl., Ex. B, at 2, ECF No. 11. The same complaint was sent to the Equal Employment Opportunity Commission ("EEOC"), pursuant to its work sharing agreement with the NYSDHR.

On August 4, 2015, the NYSDHR dismissed the complaint for "administrative

---

a Coke in his office. He got up from the table at which we were working, went over to his desk to get the Coke, looked at the can, and said, "Who has put pubic hair on my Coke?"

*Nomination of Judge Clarence Thomas to be Associate Justice of the Supreme Court of the*

*United States*, 102d Cong. 38 (1991) (statement of Anita Hill, Professor of Law, University Of Oklahoma, Norman, OK).

**2.** This Court previously declined to construe as related the case against Argus Media because it was not related. ECF No. 43.

convenience." *Id.* Ex. B, 2. Plaintiff took an appeal from this closure to the Supreme Court of the State of New York, which affirmed NYSDHR's dismissal of the case. *See Mira v. N. Y. State Div. of Human Rights*, No. 101810/2015 (Aug. 24, 2016) (WebCivil Supreme).

On September 22, 2015, the EEOC dismissed Plaintiff's charge as untimely, and advised Plaintiff of her right to sue in federal court within 90 days of receipt of the notice. *See* Compl., 10. Plaintiff commenced the instant action on December 22, 2015—within 90 days of Plaintiff's receipt of the EEOC's notice of dismissal (just barely)—against her former employer, Platts, and the following supervisors: John Kingston, Beth Evans, Richard Rubin, and Kevin Saville. The Court construes the complaint to allege claims of retaliation based on Plaintiff's open discussion of sexual harassment in the workplace and creating a hostile work environment based on race and/or national origin, which ultimately forced plaintiff to leave her job (constructive discharge)—all in violation of Title VII and the various corresponding state and local statutes. Pl.'s Opp'n, 1. She also appears to allege that Defendants continued their harassment after she left Platts.

**The Instant Motion**

On April 27, 2016, all Defendants filed this motion to dismiss the complaint as time-barred pursuant to Rule 12(b)(6), and Beth Evans moved to dismiss for failure to serve her with process in accordance with Federal Rule of Civil Procedure 4(m).

---

**3.** Plaintiff is a resident of Manhattan, New York. Compl. at 2, Docket No. 2. Although nothing in the record discloses Defendant Platts's domicile, the Court takes judicial notice that, at the time Plaintiff filed her complaint with the Court, Defendant's most

## DISCUSSION

### I. Legal Standard for Rule 12(b)(6) Motion to Dismiss Pro Se Litigant's Complaint

■ When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. *See Krimstock v. Kelly*, 306 F.3d 40, 47–48 (2d Cir. 2002). The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The Court may take judicial notice of any publicly available documents. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). When the plaintiff is proceeding pro se, however, courts have on occasion considered additional materials submitted by the litigant in opposition to a motion to dismiss. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987); *Fox v. City of New York*, No. 03–CV–2268, 2004 WL 856299, at *1 (S.D.N.Y. Apr. 20, 2004).

### II. Plaintiff Did Not File Her Charge Within the Requisite 300 Days After the Last Act of Discrimination

■ Plaintiff has come to federal court. She asserts claims under federal law, and pendent claims under state and local law. Because there is no diversity of citizenship,[3] her fate in this Court rests on the viability of her federal claims, which are

recent Form 8–K filed with the Securities Exchange Commission identified it as a New York corporation with its principal place of business in New York. *See* McGraw–Hill Fin., Inc., Current Report (Form 8–K) (Nov. 3, 2015).

brought pursuant to Title VII of the Civil Rights Act of 1964, as amended.

■ Under federal law the only proper defendant in a Title VII claim is the plaintiff's employer—no Title VII claim lies against the executives or other employees of the employer. *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Therefore, to the extent Plaintiff has tried assert a Title VII claim against any of the individual defendants (John Kingston; Beth Evans, Kevin Saville, and Richard Rubin), she fails to state a claim under federal law, and those claims are dismissed with prejudice.

This leaves Plaintiff's Title VII claim against Platts. If that claim does not survive this motion to dismiss, then Plaintiff is out of court—out of *this* Court, in any event, because this Court will not exercise supplemental jurisdiction over discrimination claims brought solely under state or especially local law.

■ Title VII's statute of limitations provision bars employment discrimination claims based on events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency. 42 U.S.C. § 2000e-5(e)(1); *Butts v. City of New York Dep't of Hous., Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). Plaintiff's employment ended on or about January 3, 2013. Def.'s Mot. to Dismiss, 6. Since any and every action of *employment discrimination* that plaintiff could allege—including a hostile work environment—had to have been committed prior to that day, Plaintiff had until October 30, 2013, at the latest, to file a charge with the NYSDHR and/or the EEOC.[4] Plaintiff did not do so. She finally filed her administrative complaint on February 3, 2015—761 days after her last day of work on January 3, 2013.

Plaintiff also alleges that events occurred after she was constructively discharged that continued to make her life difficult—she was harassed by strangers on the subway; her former supervisor obliquely referred to her in a post-employment email; and she even had a physical altercation with someone not alleged to have worked for Platts when she went to the company's office to serve process. *See supra*, at 232–33. Plaintiff seems to think that these things (1) are connected to her employment at Platts; (2) constituted further harassment/hostile work environment; and (3) somehow (under a "continuing violation" theory) extended the statute of limitations of her Title VII claim

■ Plaintiff correctly points out that Title VII does—in certain instances—protect against post-employment retaliation. In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), for example, the defendant company "blacklisted" the former employee and wrongfully refused to write a recommendation letter; in *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997), a former employer sullied its former employee's reputation in retaliation for protected activity relating to the prior employment.

But the kinds of circumstances that give rise to such claims are not alleged in Plaintiff's pleading (which border on the bizarre). As noted above, Plaintiff immediately secured employment with Argus Media after she resigned from Platts; in fact, she began working there the same month. The acts of harassment of which she complains (assuming them to be allegations of

---

4. At that, it is highly likely that some of what she charges would have been time-barred, although the so-called "continuing violation" doctrine might have made some of her charges timely.

harassment) do not relate to her new job or to any inability to procure employment; they are simply unpleasant things that happened to Plaintiff (not at her new place of employment) that she attributes Platts. That is not the sort of limited post-employment "retaliation" that is protected by Title VII.

Furthermore, she alleges not a single plausible fact to suggest that anyone at Platts either perpetrated the things she describes in her complaint or caused them to happen to her. Indeed, her prolix complaint is devoid of any allegation that anyone associated with Defendant Platt ever had contact with anyone at Argus Media regarding Plaintiff. However, in her papers responding to the instant motion, Plaintiff reveals her belief that there was a meeting in May 2013 among the principals at the two companies, after which conditions began to be difficult for her at Argus. This, I gather, is the basis for her assertion that Platts' retaliatory conduct "spilled over into her successive job," Pl.'s Opp'n, 2, and "sabotaged her successive worklife." Compl., 8.

So let us assume that such a meeting took place; and since Plaintiff does not date it, other than to say it occurred in May 2013, let us say it happened on May 31, the last day of the month.[5] If the meeting that Plaintiff imagines actually occurred, then that was the day that her 300–day period for filing a charge against Platts began to run, because that was the last employment-related act that Platts allegedly took against Plaintiff. Three hundred days from May 31, 2013 is March 27, 2014. That still makes Plaintiff's administrative filing late by 313 days.

In short, even deeming Plaintiff's complaint amended to assert the existence of this allegedly nefarious May 2013 meeting between unnamed representatives of her current and former employers, Plaintiff filed her charge on a date well beyond the 300–day limitations period for such submissions.

### Equitable Tolling Is Not Available to Plaintiff

The only question that remains is whether the 300–day period for filing a charge with the EEOC/NYSDHR was somehow tolled for 461 days (or 313 days)—which would make her extremely belated filing of an administrative charge timely.

The answer is no, it was not.

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl v. City of Long Beach*, 296 F.3d 76, 82–83 (2d Cir.2002). In addition, New York law provides that where a person "is under a disability ... at the time the cause of action accrues," the applicable statute of limitations will be tolled. N.Y. C.P.L.R. § 208 (McKinney 2016). Although illness is, on its own, insufficient for equitable tolling purposes, tolling is appropriate if a plaintiff is "unable to protect [his] legal rights because of an overall inability to function in society" at the time an action

---

**5.** All of the individual defendants have submitted sworn statements to the Court denying that they ever spoke to anyone at Argus about plaintiff (Docket Nos. 37–40.0), but on this motion to dismiss (not for summary judgment), the Court has no business considering those sworn statements, and I expressly declines to do so.

accrues. *Gardner v. Wansart*, No. 05–CV–3351, 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006).

■ Equitable tolling is an affirmative defense, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), which means that Plaintiff did not need to affirmatively plead it in her complaint. However, Plaintiff herself raised the possibility of an equitable tolling argument in her response to the motion to dismiss. Pl.'s Opp'n, 9. As she has indicated an intent to avail herself of this defense, Plaintiff, facing a motion to dismiss on statute of limitations grounds, has to provide the Court with some reason to believe that she might have been incapable of filing a charge with the EEOC until she finally did so. Plaintiff's bare acknowledgment that that the Court has the power to equitably toll the statute of limitations does not suffice.

Plaintiff has provided no reason why she could not have filed her charge sooner. Because she is pro se, it would ordinarily be this Court's practice to ask Plaintiff to explain to the court why equitable tolling might be available to her. However, in this case, it is obvious from the record that Plaintiff has no basis to assert that her time to file a charge should be equitably tolled.

Plaintiff's pleading admits of no inference that Platts kept her from learning about her cause of action. Indeed, she affirmatively asserts that she was complaining about discrimination against her on the basis of her race and national origin for some years prior to the time she left her job. Platts had no obligation to explain to Plaintiff, as she walked out the door, where she could file a charge against it and how long she had to do so.

And Plaintiff cannot invoke disability to justify her failure to file, either; she obtained employment with Argus Media very shortly after leaving Platts and she worked there until May of 2014, months after the last day to file her charge came and went. Pl.'s Opp'n, 6. Plaintiff's papers filed in opposition to the motion to dismiss on limitations grounds reveal that she was holding down a job during the entire period that was available to her to file a charge, thereby refuting any suggestion that she was unable to protect her rights because of "an overall inability to function in society" during those 461 (or 313) days.

There is, therefore, no bar to dismissing Plaintiff's claims against Platts under Title VII as barred by the applicable statute of limitations. Those claims are dismissed with prejudice.

## III. Plaintiff's State Law Claims are Dismissed without Prejudice

Having dismissed Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over her claims under state and city law. *See* 28 U.S.C. § 1367(c)(3).

As noted above, *see supra* n.3, Plaintiff is not diverse from Defendant Platts. As long as there is no diversity between Plaintiff and any one defendant, the Court's diversity jurisdiction cannot be invoked. *See* 28 U.S.C. § 1332(a). Thus, only the existence of a federal question can get her into this Court. *See* 28 U.S.C. § 1331. The Court has dismissed Plaintiffs federal question claims with prejudice, so federal question jurisdiction no longer exists. Therefore, the entire action will be dismissed.

The Court expresses no view as to whether Plaintiff could successfully prosecute either her NYSDHR claim, which is subject to a one-year statute of limitations, N.Y. Exec. Law § 297.9 (McKinney 2016), or her NYCDHR claim, which is subject to a three-year statute of limitations, N.Y.C. Admin. Code § 8–502(d), in state court.

The Court advises Plaintiff that she has six months within which to file an action reasserting those claims in the New York State Supreme Court, if she wishes to do so. N.Y. C.P.L.R. § 205(a) (McKinney 2016).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's Title VII claims is granted with prejudice. Plaintiff's state and city law claims, as well as any claim she may have under the law of the State of New York for post-employment harassment, are dismissed without prejudice.

The Clerk of the Court is directed to close this case.